FILED

February 18, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 9:19 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | |
|---|---|
| WILLIAM THOMAS<br>Employee, | ) Docket No.: 2015-07-0229 |
| v. | ) State File Number:70701-2015 |
| MTD PRODUCTS, INC.<br>Employer. | ) Judge Amber E. Luttrell |
| AND | ) |
| ACE AMERICAN INSURANCE CO.<br>Insurance Carrier. | ) |

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the employee, William Thomas, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is the compensability of Mr. Thomas' right shoulder claim and his entitlement to medical benefits. The central legal issues are whether Mr. Thomas is likely to prevail at a hearing on the merits regarding whether his right shoulder injury arose primarily out of and in the course and scope of his employment and if compensable, whether Dr. Nord's surgical recommendation was reasonable and medically necessary for the shoulder injury. For the reasons set forth below, the Court finds Mr. Thomas carried his burden of proof and he is entitled to medical benefits with Dr. Nord for his right shoulder injury.

### History of Claim

Mr. Thomas is a seventy-one-year-old resident of Weakley County, Tennessee. (T.R. 1.) He has worked at MTD in Martin, Tennessee since 1994.

In December 2014, Mr. Thomas worked on the log splitter line as a press operator. At the time of injury, he performed two different jobs. He ran a press that required him to press a button to install a battery into a unit. He also set up another machine that presses batteries, but it required that he push up and pull down a long lever to operate the press. Mr. Thomas testified he experienced pain in the top of his right shoulder after two to

1

three days of pushing up and pulling down the lever. On December 17, 2014, Mr. Thomas reported the injury by documenting it in the MTD Accident Report Log Book. (Ex. 14.) Ms. Brenda Brawner, MTD's industrial nurse and workers' compensation coordinator, testified that MTD instructs all employees during orientation to document any injury, large or small, in the Accident Report Log Book. She acknowledged Mr. Thomas signed the log book on December 17, 2014. Mr. Thomas did not speak to anyone about his injury that day.

The following day, Mr. Thomas' supervisor, Darrell Poiner, requested he work on a different unit loading parts on a mower. Mr. Thomas testified he told Mr. Poiner he could not perform the job because he injured his right shoulder. Mr. Poiner reassigned Mr. Thomas to a different job training another employee instead of loading parts on the mower. Mr. Thomas trained the coworker for approximately two days. Shortly thereafter, MTD shut down the facility for the holidays.

Mr. Thomas testified he saw Ms. Brawner on December 29, 2014, and complained of pain in his right shoulder, and she gave him pain medicine to rub on his shoulder. Ms. Brawner denied seeing Mr. Thomas on December 29, because the plant was shut down on that date; however, she conceded it is possible she could have given him pain medication on another date and he was mistaken about the date.

Mr. Thomas sought treatment with his family physician, Dr. Selena Parnell Dozier, on the afternoon of December 29, complaining of pain in his right shoulder. (Ex. 5.) Dr. Dozier noted a "history of trauma" and stated, "the problem has been rapidly worsening." Mr. Thomas reported the current episode began the prior day after "performing over-head activity for extended period of time over the weekend." Following an exam, Dr. Dozier diagnosed acute shoulder pain, injected Mr. Thomas' shoulder, and prescribed anti-inflammatory medication.

Mr. Thomas testified he returned to work on or about January 4 or 5, 2015, from the shutdown and resumed his position pressing batteries. He attempted the job for a day or two and experienced increased pain in his right shoulder. Mr. Thomas went to Brenda Brawner, MTD's nurse, concerning shoulder and chest pain. Ms. Brawner confirmed Mr. Thomas came to see her on January 5, 2015. She testified this was the first time she spoke with Mr. Thomas regarding his right shoulder. She documented the discussion in a memorandum. (Ex. 15.) Ms. Brawner testified Mr. Thomas told her he was working on something for "momma" during the Christmas break. She noted in a memo "the project had made his shoulder worse but he pointed to the center of his chest he said since he hurt himself worse during the break he just went to his own Dr. and they had started running a series of tests." *Id.* MTD subsequently prepared a First Report of Work Injury on February 22, 2015, stating Mr. Thomas notified MTD of an injury on January 5, 2015, from running a press and using a wrench. (Ex. 3.)

2

Mr. Thomas sought emergency treatment at Baptist Hospital on January 6, 2015, and gave a history of pain in his right neck, shoulder and collarbone area since December 28, 2014. He complained of right shoulder and collarbone swelling for one week. Mr. Thomas was diagnosed with a sternoclavicular mass and additional testing revealed an abscess in the right side of his chest. According to Mr. Thomas, the doctors "got away from the shoulder and were focused on the infection." Mr. Thomas treated with Drs. Earl Stewart, Douglas Appleby, Barbara Menzies, and John Sparrow over the course of six months for the mass along the right medial clavicle. MTD admitted into the record a hospital admission record from Dr. Menzies dated January 21, 2015, where the history provided "70 y/o man who has had painful swelling and redness at upper rt chest near collarbone x 3 wk. He recalls heavy strenuous physical activity using his arms and upper torso with home projects in early Dec." (Ex. 12.) Mr. Thomas was hospitalized for three days for the chest mass and underwent cardiothoracic surgery on April 8, 2015. (Ex. 7-9.)

Initially, Mr. Thomas, through counsel, contended the abscess was causally related to his right shoulder injury. As a result, MTD filed a Notice of Denial of Claim of the claim on March 22, 2015, stating, "Claimant's injuries do not coincide with workplace duties. Claimant has an infection in his shoulder and abscess in right chest. Not work related." (Ex. 4.) At the Expedited Hearing, the parties agreed the medical proof indicated the abscess was unrelated to the right shoulder injury.

Prior to the denial, Mr. Thomas signed an MTD Accident Investigation Report on or about February 10, 2015. Mr. Thomas testified his signature appeared on the report; however, he could not specifically recall signing it. The report described the injury to Mr. Thomas' shoulder as "running a press/using wrench to put in screws." It went on to state, "Pressing bearing into part that goes in mower." Mr. Thomas testified this referred to a handle on the mower that pulls the deck up and stated "all that went with the same job."[1]

Following treatment for the unrelated abscess, MTD offered Mr. Thomas a panel of physicians for his right shoulder injury on April 24, 2015.[2] (Ex. 1.) Mr. Thomas selected Dr. Keith Nord, orthopedist, for treatment.

Mr. Thomas saw Dr. Nord on June 15, 2015, and reported right shoulder pain that started "after using a bar or lever to move and close material at work." (Ex. 10.) Dr. Nord commented, "his abscess and clavicle osteomyelitis are not related to his shoulder pain and did not start in the shoulder." Dr. Nord recommended an MRI for his shoulder complaints and opined it was work related. Dr. Nord noted a January 5, 2015 date of

---

[1] The Court understood Mr. Thomas' testimony to be these tasks were included in the press operator job he performed in December 2014.

[2] The Court notes MTD offered Mr. Thomas a panel of physicians approximately one month *after* filing a Notice of Denial of the Claim. MTD offered no testimony explaining why it offered a panel of physicians subsequent to denying the claim. However, in light of the basis stated in the Notice of Denial, the Court interpreted the denial to concern the abscess Mr. Thomas originally alleged was related to the shoulder injury.

3

injury. Upon review of the MRI results, Dr. Nord diagnosed impingement syndrome and a partial rotator cuff tear. Based upon these findings and Mr. Thomas' continued complaints, Dr. Nord recommended a right shoulder arthroscopy rotator cuff repair, subacromial decompression, and distal clavicle excision.

MTD submitted Dr. Nord's surgical recommendation for utilization review (UR) with Medical Review Stream by Concentra. (Ex. 11.) Dr. Mark Cutright performed the review. He issued a report dated July 20, 2015, and opined the recommended surgery was "non-certified." He stated there was a lack of documentation of nighttime pain and weakness, and the duration of conservative treatment was unknown. Dr. Cutright recommended at least three to six months of conservative care, including cortisone injections, before considering surgery. Dr. Cutright discussed the review with Dr. Nord and noted that Dr. Nord stated Mr. Thomas had previously undergone physical therapy while recovering from the medial clavicle abscess. Also, Dr. Nord advised Dr. Cutright that he was "hesitant to place a cortisone shot close to where the old abscess was and this was the reason he elected for surgical intervention." The proof indicated MTD's insurance claim adjuster, Paul Franklin, advised Mr. Thomas' counsel of the UR determination by email dated August 13, 2015. (Ex. 11.)[3]

Mr. Thomas filed a Petition for Benefit Determination seeking continued medical treatment and surgery with Dr. Nord, temporary disability benefits, and mileage. (T.R. 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. (T.R. 2.) Mr. Thomas filed a Request for Expedited Hearing, and this Court heard the matter on January 11, 2016.

At the hearing, Mr. Thomas asserted he sustained a compensable work injury to his right shoulder on or about December 17, 2014. He acknowledged the right sided clavicle abscess complicated his right shoulder injury claim. However, he conceded at the hearing that the abscess was unrelated to his right shoulder work injury. He argued his panel-selected physician, Dr. Nord, opined his shoulder injury was work related and Dr. Nord's recommended treatment was medically necessary for the injury. Mr. Thomas requested ongoing medical treatment, including surgery, with Dr. Nord. Mr. Thomas did not request or offer any proof regarding past temporary disability benefits or mileage.

MTD countered that Mr. Thomas gave inconsistent histories of injury and his shoulder condition was not related to his originally reported work injury of December 17, 2014. Instead, it argued his condition was potentially the result of a subsequent intervening event. MTD further requested the Court give Dr. Cutright's UR opinion greater consideration than Dr. Nord's opinion.

---

[3] The parties submitted no proof into evidence that Mr. Thomas or Dr. Nord appealed the UR decision.

**Findings of Fact and Conclusions of Law**

Mr. Thomas need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

*History of Injury*

At the Expedited Hearing, the Court finds Mr. Thomas appeared calm, at ease, self-assured, steady, confident, forthcoming, reasonable and honest, which characteristics, according to the Tennessee Supreme Court, are indicia of reliability. *See Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014). Although the Court finds Mr. Thomas was a somewhat poor historian concerning dates and given the overlapping symptoms arising from his unrelated abscess, he still credibly testified he began having pain in his right shoulder from performing his job duties as a press operator in the log-splitting department on or about December 17, 2014. Pursuant to MTD policy for work accidents, he documented the complaint on MTD's Accident Report Log. (Ex. 14.)

Mr. Thomas' uncontroverted testimony was he complained to his supervisor, Mr. Poiner, that he could not perform a certain job because he injured his right shoulder. As a result, Mr. Poiner allowed Mr. Thomas to train a coworker instead of performing the job he felt unable to do. The Court further finds the MTD Accident Report supports Mr. Thomas' injury to his right shoulder from performing his job duties "running a press/using wrench to put screws in/pressing bearing into part that goes into mower." Mr. Thomas testified this was all part of the same press operation job he was performing when he injured his right shoulder. Once paneled, Mr. Thomas also gave his authorized physician, Dr. Nord, a history of his right shoulder pain starting after using a bar or lever to move and close material at work. The Court finds these histories, given at different times, to be consistent with Mr. Thomas' testimony concerning his injury.

MTD argued Mr. Thomas gave different histories suggesting a subsequent intervening injury to his right shoulder. Mr. Thomas denied any injury to his right shoulder between December 17, 2014, and January 5, 2015, when he spoke to Ms. Brawner. After careful review of the totality of the proof, the Court finds no proof of an

5

intervening right shoulder injury. The Court finds Mr. Thomas' unfortunate development of a painful right medial clavicle abscess complicated his right shoulder claim.

On January 6, 2015, Mr. Thomas presented to the emergency room at Baptist Hospital complaining of swelling for one week and pain in his right neck, shoulder, and collarbone since December 28, 2014. The doctor diagnosed a sternoclavicular mass and began evaluation and treatment for the abscess. The history Mr. Thomas provided the emergency room correlated with the visit to Dr. Dozier on December 29, 2014, when he complained of pain that began the day before. The history Mr. Thomas gave Dr. Menzies on January 21, 2015, was of painful swelling and redness at the upper right chest near his collarbone for three weeks. Dr. Menzies noted Mr. Thomas recalled heavy strenuous physical activity using his arms and upper torso with home projects in December. He did not mention a shoulder injury arising out of his home projects at home, but rather the pain in his upper right chest near the collarbone. (Ex. 12.) Ms. Brawner testified and her memo documented that while Mr. Thomas mentioned his shoulder hurting worse, he pointed to the center of his chest and complained of pain for which he sought medical treatment over the Christmas break. (Ex. 15.) The Court finds these histories most consistent with Mr. Thomas' unrelated intervening abscess in his right upper chest.

MTD also argued Mr. Thomas gave a different history of injury to his shoulder when he signed the Accident Report Log on December 17, 2014, than his testimony at the Expedited Hearing. The Court respectfully disagrees. MTD suggested Mr. Thomas asserted on the log report that he injured his right shoulder while picking up a tote. The Court notes the Accident Report Log does not state Mr. Thomas' injury resulted from picking up a tote. (Ex. 14.) According to the log sheet, Mr. Thomas indicated his "Work Station/Work Cell" was "pick up tote." Nowhere on the log does the form ask specifically how the accident occurred. The log form indicates Mr. Thomas reported on December 17 he worked in the log-splitting department, first shift, in the pick-up tote work station/work cell and injured his right shoulder. The Court finds this log report does not contradict Mr. Thomas' testimony at the hearing concerning his shoulder injury.

*Medical Causation*

To be compensable under the workers' compensation statutes, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14) (2015). The term "injury" is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* Moreover, "[t]he opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14)(E) (2015).

6

The only medical opinion before this Court addressing medical causation for Mr. Thomas' right shoulder condition is from Dr. Nord, the panel-selected physician. In June 2015, upon taking a history from Mr. Thomas and examining him, Dr. Nord opined Mr. Thomas' shoulder condition was work related. Pursuant to section 50-6-102(14)(E) (2015), Dr. Nord's causation opinion is afforded a presumption of correctness that is rebuttable only by a preponderance of the evidence. The Court finds there is no countervailing medical evidence to rebut Dr. Nord's opinion at this time. Accordingly, Mr. Thomas came forward with sufficient proof of medical causation at this interlocutory stage in support of his right shoulder injury.

*Dr. Nord's Recommendation for Surgery*

MTD further contended the Court should deny Dr. Nord's surgical recommendation based upon the opinion of Dr. Cutright, the UR physician. Dr. Cutright recommended conservative treatment, including cortisone injections, for three to six months prior to considering surgery. He further concluded the surgery was "non certified" because there was a lack of documentation of weakness and night time pain.

Tennessee Code Annotated section 50-6-122(a)(1) (2015) provides it is: "the legislative intent to control increasing medical costs in workers' compensation matters by establishing cost control mechanisms to ensure cost-effective delivery of medical care services by employing a program of medical case management and a program to review the utilization and quality of medical care services."

MTD relied on the utilization review report to support its position that the denied surgery is not reasonable or necessary. Therefore, MTD must establish the validity of the utilization review decision by showing it meets the Bureau's requirements as set out in Tennessee Compilation Rules and Regulations 0800-02-06.01 (2015), *et seq.*

Rule 0800-02-06-.04(2)(a) requires the utilization review agent to only consider the medical necessity, appropriateness, efficiency, and quality of the recommended treatment for the employee's condition. Dr. Mark Cutright, a board-certified orthopedic surgeon, licensed in Ohio and TN, conducted the peer review and stated the purpose of the review "is to determine if the requested medical treatment appears to be medically reasonable and appropriate." (Ex. 11.)

Rule 0800-02-06-.04(2)(d) requires the utilization review agent to provide the employee with a copy of the utilization review report and appeal form, in the case of a denial of benefits. Rule 0800-02-06-.06(2) requires the utilization review agent to communicate the determination in writing to the employee within *seven business days* of the receipt of the assignment from the employer. Finally, section (6)(A) requires the *employer* to give written notification to an employee of a utilization review determination denying treatment within *three business days* of receiving the report.

7

The Court notes Dr. Cutright issued his UR report denying Dr. Nord's surgical recommendation on July 20, 2015. (Ex. 11.) The only proof offered into evidence regarding when Mr. Thomas learned of the UR determination was an email dated August 13, 2015, from the insurance adjuster, Paul Franklin, responding to email correspondence from Mr. Thomas' attorney. *Id.* In the email, Mr. Franklin advised Mr. Thomas' attorney of the denial of surgery based upon Dr. Cutright's UR determination. *Id.* No appeal form accompanied the report. The Court further notes Mr. Franklin's email advising of the UR decision was in response to an email from Mr. Thomas' attorney inquiring into when surgery would be scheduled.

The Court finds MTD offered no proof at the Expedited Hearing evidencing that Dr. Cutright or MTD provided a copy of the report and appeal form to Mr. Thomas within the required time period set forth in the Rules. Thus, MTD did not carry its burden establishing it complied with the rules governing utilization review. Instead, MTD requested the Court consider Dr. Cutright's opinion in reaching its decision.

Upon review and consideration of Dr. Cutright's report, the Court notes Dr. Cutright spoke to Dr. Nord and discussed the issues found in his review. Dr. Nord advised Mr. Thomas underwent conservative treatment when he had physical therapy during his recovery from the medial clavicle abscess. Aware of the extensive treatment and surgery Mr. Thomas underwent for his abscess, Dr. Nord advised Dr. Cutright that he was "hesitant to place a cortisone shot so close to the location of the abscess." (Ex. 11.) Dr. Cutright noted this was the reason Dr. Nord elected surgical intervention for the rotator cuff tear. Based upon these facts and the totality of the proof before the Court at this time, the Court finds Dr. Nord's opinion and treatment recommendation more persuasive.

Accordingly, as a matter of law, the Court finds Mr. Thomas came forward with sufficient evidence from which it may conclude that he is likely to prevail at a hearing on the merits that his shoulder injury arose primarily out of and in the course and scope of his employment and that he is entitled to medical benefits with Dr. Nord.

**IT IS, THEREFORE, ORDERED** as follows:

1. MTD or its workers' compensation carrier shall provide Mr. Thomas with medical treatment for his right shoulder injury as directed by Dr. Nord, including the recommended surgical procedure, pursuant to Tennessee Code Annotated section 50-6-204. Medical bills shall be furnished to MTD or its workers' compensation carrier by Mr. Thomas or the medical providers.

2. This matter is set for a Status conference on March 11, 2016, at 9:00 a.m.

8

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 18th day of February, 2016.**

**Judge Amber E. Luttrell**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Luttrell, Court of Workers' Compensation Claims. You must call 901-543-2668 or toll-free at 855-543-5046 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. C-42 Panel of Physicians
2. Wage Statement
3. First Report of Injury
4. Notice of Denial
5. Medical records of The Doctor's Clinic
6. Medical records of Baptist Memorial Hospital
7. Medical records of Family Health Clinic
8. Medical records of The Jackson Clinic
9. Medical records of Cardiothoracic Surgery Center
10. Medical records of Sports Ortho and Spine
11. Utilization review Report
12. Medical records of Baptist One Care
13. Accident Investigative Report
14. Log Book
15. Brenda Lynch Brawner's Memo

Technical record:[4]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Notice of Denial

---

[4] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the _18_ th day of February, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Jeffrey P. Boyd, Esq. Attorney for Employee | | | X | jboyd@hillboren.com dmyles@hillboren.com |
| James Glasgow, Esq., Attorney for Employer | | | X | Jglasgow@glascowchism.com |
| Art Wells, Esq., Attorney for Second Injury Fund | | | X | Art.Wells@tn.gov |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
WC.CourtClerk@tn.gov

12